UNITED STATES DISTRICT COURT  
CENTRAL DISTRICT OF CALIFORNIA

JS-6

CIVIL MINUTES - GENERAL

| | |
|---|---|
| Case No. CV 14-00272 MMM (MRWx) | Date April 7, 2014 |

Title  *Amador v. John Crane, Inc., et al.*

Present: The Honorable   MARGARET M. MORROW

| ANEL HUERTA | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:**    Order Remanding Case for Lack of Subject Matter Jurisdiction

On December 5, 2013, Miguel Amador filed this action against his former employer, John Crane, Inc. ("John Crane"), Rob Castro, and various fictitious defendants in Los Angeles Superior Court, asserting six state law claims based on his allegedly wrongful termination due to disability: (1) wrongful termination in violation of public policy; (2) retaliation in violation of the Fair Employment and Housing Act ("FEHA"); (3) intentional infliction of emotional distress; (4) disability discrimination; (5) failure to accommodate; and (6) failure to engage in the interactive process.[1] Defendants timely removed the action on January 13, 2014, invoking the court's diversity jurisdiction, and asserting that Castro, allegedly a California citizen like Amador, had been fraudulently joined.[2] On January 23, 2014, pursuant to the parties' stipulation, the court dismissed Castro and the claim for intentional infliction of emotional distress, the only cause of action in which Castro was named.[3]

On March 10, 2014, the court issued an order to show cause why the action should not be remanded for lack of subject matter jurisdiction, noting that John Crane had not adequately alleged its own and Amador's citizenship, and had not adequately shown that the amount in controversy

---

[1]Notice of Removal ("Removal"), Docket No. 1 (Jan. 13, 2014), Exh. 1 ("Complaint").

[2]Removal, ¶¶ 4-6.

[3]Order Granting Joint Stipulation to Individual Defendant and Third Cause of Action, Docket No. 11 (Jan. 23, 2014) ("Order Granting Joint Stipulation").

exceeds $75,000.[4] On March 13, 2014, John Crane filed a stipulation seeking an extension of time to respond to the court's order to show cause,[5] which the court granted.[6] On March 27, 2014, John Crane filed a response to the order to show cause.[7] On April 3, 2014, Amador filed a reply urging the court to remand the action.[8] Because John Crane's response does not satisfy the court that it has diversity jurisdiction under § 1332, the court must remand the action to state court.

## I. BACKGROUND

Amador alleges that he was hired by John Crane on November 26, 2012 as a machinist.[9] The following week, he developed Syncope, a condition that results in fainting spells due to low oxygen and blood flow to the brain.[10] On December 3, 2012, Amador missed work because he was feeling nauseous and dizzy.[11] The following day, December 4, 2012, he fainted at the wheel of his car as he arrived at work; he crashed into two company cars and totaled his own vehicle.[12] Castro, Amador's supervisor, witnessed the accident.[13] Amador went to the emergency room, where he was diagnosed with Syncope. His doctor placed him on disability leave.[14] Amador's wife called Castro and John Crane's Human Relations Representative to inform them of Amador's condition and physician-ordered disability leave, which was to begin that day and end on December 12, 2012.[15]

---

[4] Order to Show Cause ("OSC"), Docket No. 18 (Mar. 10, 2014).

[5] Stipulation for Extension of Time to File Order to Show Cause, Docket No. 20 (Mar. 13, 2014).

[6] Order Granting Stipulation to Extend Time to File Response, Docket No. 21 (Mar. 14, 2014).

[7] Response Filed by John Crane ("Response"), Docket No. 25 (Mar. 27, 2014).

[8] Reply in Support of Remand ("Reply"), Docket No. 26 (Apr. 3, 2014).

[9] Complaint, ¶ 10.

[10] *Id.*, ¶ 13.

[11] *Id.*, ¶ 11.

[12] *Id.*, ¶ 12.

[13] *Id.*

[14] *Id.*, ¶ 13.

[15] *Id.*, ¶ 14.

Amador was discharged from the hospital on December 6, 2012.[16] On December 7, 2012, he went to John Crane to pick up his paycheck.[17] When he got there, however, Castro told him that he was terminated.[18] Amador asserts he asked why he was being terminated and Castro did not respond.[19] Amador contends he was terminated because of his disability and his request for leave.[20]

## II. DISCUSSION

### A. Legal Standard Governing Removal Jurisdiction

The right to remove a case to federal court is entirely a creature of statute. See *Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1064 (9th Cir. 1979). The removal statute, 28 U.S.C. § 1441, allows defendants to remove when a case originally filed in state court involves a federal question or is between citizens of different states and the amount in controversy exceeds $75,000. See 28 U.S.C. §§ 1441(a), (b). Only state court actions that could originally have been filed in federal court can be removed. 28 U.S.C. § 1441(a) ("Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending"); see *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987); *Ethridge v. Harbor House Rest.*, 861 F.2d 1389, 1393 (9th Cir. 1988).

The Ninth Circuit "strictly construe[s] the removal statute against removal jurisdiction," and "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (citing *Boggs v. Lewis*, 863 F.2d 662, 663 (9th Cir. 1988), *Takeda v. Northwestern Nat'l Life Ins. Co.*, 765 F.2d 815, 818 (9th Cir. 1985), and *Libhart*, 592 F.2d at 1064). "The 'strong presumption' against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper." *Id.* (citing *Nishimoto v. Federman-Bachrach & Assocs.*, 903 F.2d 709, 712 n. 3 (9th Cir. 1990), and *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1195 (9th Cir. 1988)).

---

[16]*Id.*, ¶ 15.

[17]*Id.*

[18]*Id.*

[19]*Id.*

[20]*Id.*, ¶ 40.

### B. Whether the Case Was Properly Removed Under 28 U.S.C. § 1332

As noted, John Crane contends that the court has diversity jurisdiction to hear this action. "[J]urisdiction founded on [diversity] requires that parties be in complete diversity and the amount in controversy exceed $75,000." *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003); see 28 U.S.C. § 1332(a)(1) ("The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States. . ."). Federal courts have jurisdiction only where there is complete diversity, i.e., the plaintiff's citizenship must be diverse from that of each named defendant. 28 U.S.C. §§ 1332(a)(1), (c)(1); see *Caterpillar, Inc. v. Lewis*, 519 U.S. 61, 68 n. 3 (1996); see also *Cook v. AVI Casino Enters., Inc.*, No. 07-15088, 2008 WL 4890167, *3 (9th Cir. Nov. 14, 2008) (Unpub. Disp.) ("We have jurisdiction only if Cook, a resident of California, has citizenship which is diverse from that of every defendant," citing *Lewis*, 519 U.S. at 68).

#### 1. Whether There Is Complete Diversity of Citizenship

##### a. Amador's Citizenship

As noted, John Crane did not adequately allege Amador's citizenship because it asserted only that Amador was a resident of Los Angeles. A person is a citizen of the state in which he has his domicile, i.e., a permanent home where he intends to remain or to which he intends to return. See *Gilbert v. David*, 235 U.S. 561, 569 (1915); *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001) ("A person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return"). Residency does not determine citizenship for diversity jurisdiction purposes. *Kanter*, 265 F.3d at 857 ("[T]he diversity jurisdiction statute, 28 U.S.C. § 1332, speaks of citizenship, not of residency. To be a citizen of a state, a natural person must first be a citizen of the United States. The natural person's state citizenship is then determined by her state of domicile, not her state of residence. A person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return. A person residing in a given state is not necessarily domiciled there, and thus is not necessarily a citizen of that state"); see also *Weible v. United States*, 244 F.2d 158, 163 (9th Cir. 1957) ("Residence is physical, whereas domicile is generally a compound of physical presence plus an intention to make a certain definite place one's permanent abode, though, to be sure, domicile often hangs on the slender thread of intent alone, as for instance where one is a wanderer over the earth. Residence is not an immutable condition of domicile").

In support of its response to the order to show cause, John Crane proffers the declaration of its Human Resources Manager, Tara Kandra, as well as Amador's resume, driver's license, and

personnel documents.[21] The resume, driver's license, and personnel documents show that Amador has resided and worked in California since at least 1995. The court thus concludes that John Crane has adequately shown that Amador is a California citizen. See *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986) ("the determination of an individual's domicile involves a number of factors (no single factor controlling), including: current residence, voting registration and voting practices, location of personal and real property, location of brokerage and bank accounts, location of spouse and family, membership in unions and other organizations, place of employment or business, driver's license and automobile registration, and payment of taxes").

### b. John Crane's Citizenship

"[A] corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1). The term "principal place of business" means "the place where a corporation's officers direct, control, and coordinate the corporation's activities. It is the place that Courts of Appeals have called the corporation's 'nerve center.' And in practice it should normally be the place where the corporation maintains its headquarters – provided that the headquarters is the actual center of direction, control, and coordination[.]" *Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010).

In its prior order, the court determined that John Crane had adequately alleged that it was a Delaware corporation, but had not met its burden of showing that its principal place of business is in Illinois, given that its allegations in the notice of removal were contradicted by Amador's allegation that the company's principal place of business is in California. Because the party invoking jurisdiction has the burden of proving the location of the corporation's "nerve center" or principal place of business, the court concluded that John Crane had not adequately rebutted Amador's allegations. *Id.* at 96 ("The burden of persuasion for establishing diversity jurisdiction, of course, remains on the party asserting it"); *Northern California Power Agency v. AltaRock Energy, Inc.*, No. 11–1749 SC, 2011 WL 2415748, *3 (N.D. Cal. June 15, 2011) (holding that the removing party did not meet its burden of proving its principal place of business because it "produce[d] no evidence save a print-out from the California Secretary of State's web site showing a change of address from California to Washington").

In support of its assertion that its principal place of business is in Illinois, John Crane proffers Kandra's declaration.[22] Kandra states that John Crane's manufacturing and corporate headquarters

---

[21]Response, Exh. 1 (Declaration of Tara Kandra in Response to Order to Show Cause ("Kandra Decl."), Exhs. A (Miguel Amador's Resume), B (Miguel Amador's I-9 and Photocopy of Driver's License)).

[22]*Id.*, Exh. 1 (Kandra Decl.).

are in Illinois. She states that all of the company's high-level officers, including its president, chief financial officer, and general counsel, have permanent offices in Illinois, that "[v]irtually all meetings affecting the high-level direction, control, and coordination of John Crane take place in the Illinois office locations," that day-to-day executive and administrative functions occur in Illinois, and that the corporate books and records are kept in Illinois as well.[23] Kandra reports that while John Crane has satellite manufacturing and training facilities in California, none of its high-level officers works there.[24] These statements suffice to show that John Crane's principal place of business is in Illinois rather than California. The court therefore concludes that John Crane is a citizen of Delaware (its state of incorporation) and Illinois (its principal place of business).

### c. Conclusion Regarding Complete Diversity

Based on John Crane's supplemental showing, the court is satisfied that the citizenship of the parties is diverse.[25]

### 2. Amount in Controversy

The court next examines whether John Crane has adequately established that the amount in controversy exceeds $75,000. As the court noted in its prior order, Amador's state court complaint does not quantify the amount of money damages sought. It is therefore ambiguous as to the amount in controversy, and John Crane bears the burden of showing by a preponderance of the evidence that the amount exceeds $75,000. *Corbelle v. Sanyo Elec. Trading Co., Ltd.*, C-03-1509 EMC, 2003 WL 22682464, *3 (N.D. Cal. Nov. 4, 2003) ("The Court [ ] must examine the allegations in the complaint to determine if it is facially apparent that the jurisdictional amount is in controversy. Because Ms. Corbelle's complaint contains allegations that she sustained serious and permanent injuries, that she has incurred and will continue to incur medical expenses, and that she has lost and will continue to lose wages, it is clear that the amount in controversy is not a small sum. However, the Court is not persuaded that these allegations alone establish that it is more likely than not that the amount in controversy exceeds $75,000"); see also *Matheson*, 319 F.3d at 1091 ("In this case, it is not facially evident from the Mathesons' complaint that the controversy involves more than $75,000. The complaint seeks 'in excess' of $10,000 for economic loss, 'in excess' of $10,000 for emotional distress, and 'in excess' of $10,000 for punitive damages, but how much 'in excess' is not explained").

---

[23]*Id.*, ¶¶ 3-5.

[24]*Id.*, ¶ 8.

[25]The court previously held that Amador's stipulation to dismiss Castro and his decision not to seek remand were a tacit admission that Castro was fraudulently joined and that it was unnecessary to consider his citizenship in determining whether complete diversity exists.

Courts can consider facts presented in a notice of removal as well as summary-judgment-type evidence in determining whether a defendant has shown by a preponderance of the evidence that the amount in controversy exceeds $75,000. See *Matheson*, 319 F.3d at 1090 ("Although we have not addressed the types of evidence defendants may rely upon to satisfy the preponderance of the evidence test for jurisdiction, we have endorsed the Fifth Circuit's practice of considering facts presented in the removal petition as well as any 'summary-judgment-type evidence relevant to the amount in controversy at the time of removal,'" quoting *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997)); see also *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004) (reiterating that the "amount-in-controversy inquiry in the removal context is not confined to the face of the complaint"); *Mireles v. Wells Fargo Bank, N.A.*, 845 F.Supp.2d 1034, 1069 (C.D. Cal. 2012) ("In addition to the notice of removal, the court considers 'summary-judgment-type evidence relevant to the amount in controversy at the time of removal,' such as affidavits or declarations" (internal quotation marks omitted)).

John Crane asserted in its notice of removal that the amount in controversy requirement is satisfied because Amador's annual wages would have been approximately $58,240.[26] It argued that this amount, potential punitive damages, emotional distress damages, and attorneys' fees would exceed the jurisdictional minimum.[27] As the court noted in its order to show cause, it is proper to aggregate these categories of recovery in determining the amount in controversy. *Simmons v. PCR Technology*, 209 F.Supp.2d 1029, 1032 (N.D. Cal. 2002) (aggregating attorneys' fees, compensatory, punitive, and emotional distress damages in determining whether the jurisdictional minimum had been satisfied). The court found, however, that John Crane had not shown by a preponderance of the evidence that the amount in controversy requirement was satisfied because it had provided no legal support for its contention that Amador could recover back pay equal to his annual wages despite the fact that he had worked for the company for little more than a week. The court determined that John Crane's reliance on the remaining categories of damages was speculative because it had not cited cases with similar facts that indicated that likely punitive damages, emotional distress damages, and attorneys' fees would raise the amount in controversy over $75,000. The court accordingly concluded that John Crane had failed to satisfy its burden of showing by a preponderance of the evidence that the amount in controversy exceeded $75,000. John Crane's response fails to address any of the court's prior concerns.

          a.     **Lost Wages**

Some courts in this circuit have found that an appropriate measure of lost wages for purposes of calculating the amount in controversy in wrongful termination cases is the amount of the terminated employee's wages from his or her date of termination through the date of removal; here, 57 weeks.

---

[26]Removal, ¶ 29.

[27]*Id.*

See *Soto v. Kroger Co.*, No. SA CV 12–0780–DOC (RNBx), 2013 WL 3071267, *3 (C.D. Cal. June 17, 2013) (holding that defendant's submission of a calculation of lost wages from the date of termination to the date of trial did not satisfy its burden of showing that the amount in controversy requirement was satisfied, and stating that "[w]here the guiding principle is to measure amount in controversy at the time of removal, and where Defendant bears the burden of proof on the issue, that burden is not met by merely pointing to the current picture of lost wages"); *Bigby v. DS Waters of America, Inc.*, No. CV 12–01362 MMM (CWx), 2013 WL 394876, *3 (C.D. Cal. Jan. 30, 2013) (utilizing the low end of the lost wages range defendant proposed – calculated by multiplying "the minimum 25 hours per week [plaintiff] was expected to work, her hourly wage of $13, and [the time from termination to removal] of 54 weeks" – because only that figure was "a credible calculation of Bigby's time and hours"); *Simmons*, 209 F.Supp.2d at 1032 (calculating plaintiff's wage loss from termination to removal, but declining to project future wage loss through a hypothetical trial date). This is because "[j]urisdiction based on removal depends on the state of affairs when the case is removed." *Soto*, 2013 WL 3071267 at *3 (internal citation and quotation marks omitted).

Where, however, an employee has been terminated after a short period of employment, courts are hesitant to include in the amount in controversy lost wages for the entirety of the period between the date of termination and the date of removal unless defendant shows that plaintiff will be able to recover that amount of lost wages. See, e.g., *Flores v. Atlantic Engineering Group, Inc.*, No. CV–09–362–RHW, 2010 WL 519122, *1 (E.D. Wash. Feb. 4, 2010) ("The Court finds that the amount in controversy is unclear from the face of the Complaint and that Defendant has failed to carry its burden of proof. Plaintiffs were employed for only one month and two months, each, and Defendant offers no support for its claim that Plaintiffs would be entitled to multiple years of front and back pay. Thus, nothing in the record suggests that Plaintiffs' actual damages would even begin to approach $75,000. Any other amounts Plaintiffs might claim if they prevail are entirely speculative based on this record"); *Morales v. Fagen, Inc.*, 654 F.Supp.2d 863, 873 (C.D. Ill. 2009) (finding that the amount in controversy was too speculative where plaintiff had worked for the employer only for a few weeks before being terminated, and noting that jury awards in other retaliatory termination cases that exceeded $75,000 tended to involve "significant lost earnings, or a long relationship between the employer and employee").

In its response, John Crane provides more information about Amador's estimated annual income, based on the number of hours his replacement worked. It also argues that because no one at the Cerritos, California facility where Amador worked was laid off during 2013 and because Amador has been unemployed since his termination, "it stands to reason that, at a minimum, Plaintiffs seeks one year's back pay."[28] What John Crane has not done, however, is cite any authority indicating that Amador would be entitled to recover one year of back pay given the fact that he worked for John Crane for a little over a week. Absent such a showing, John Crane's use of one year's lost wages in calculating the amount in controversy is entirely speculative.

---

[28]Response, ¶ 13.

### b. Punitive Damages

"It is well established that punitive damages are part of the amount in controversy in a civil action." *Gibson v. Chrysler Corp.*, 261 F.3d 927, 945 (9th Cir. 2001) (citing *Bell v. Preferred Life Assurance Soc'y*, 320 U.S. 238, 240 (1943), and *Goldberg v. CPC Int'l Inc.*, 678 F.2d 1365, 1367 (9th Cir. 1982)). The mere fact that a plaintiff seeks punitive damages, however, is not sufficient, standing alone, to establish that the amount in controversy exceeds the jurisdictional threshold. See *Lange v. State Farm Mut. Auto. Ins. Co.*, No. SA CV 08-1466 DOC, 2009 WL 322835, *1 (C.D. Cal. Feb. 9, 2009) ("When the amount in controversy depends largely on alleged punitive damages, the court 'will scrutinize a claim . . . more closely than a claim for actual damages to ensure Congress's limits on diversity jurisdiction are properly observed,'" quoting *McCorkindale v. Am. Home Assurance Co. A.I.C.*, 909 F.Supp. 646, 655 (N.D. Iowa 1995)).

"Whether punitive damages are sufficient to meet the amount in controversy requirement is a two-part test." *Lange*, 2009 WL 322835 at *1 (citing *Wiemers v. Good Samaritan Soc'y*, 212 F.Supp.2d 1042, 1047 (N.D. Iowa 2002)). "First, punitive damages must be available as a matter of state law." *Id.* If punitive damages are available, then the court examines as a second step "whether the amount of punitive damages will more likely than not exceed the required amount in controversy." *Wiemers*, 212 F.Supp.2d at 1047; see also *Lange*, 2009 WL 322835 at *1; *Martinez v. Infinity Ins. Co.*, No. SA CV 08-1444 DOC, 2009 WL 302189, *1 (C.D. Cal. Feb. 4, 2009). To demonstrate that it will, the defendant can proffer jury verdicts in cases with similar facts and legal claims. See *Simmons*, 209 F.Supp.2d at 1033 ("[t]o establish probable punitive damages, defendant may introduce evidence of jury verdicts in cases involving analogous facts"); *Faulkner v. Astro-Med, Inc.*, No. C 99–2562 SI, 1999 WL 820198, *4 (N.D. Cal. Oct. 4, 1999) ("A defendant can introduce other jury verdicts to bolster its claim that potential punitive damages would raise the amount in controversy to over $75,000, but those jury verdicts must involve facts analogous to its own case," citing *Conrad Associates v. Hartford Accident & Indemnity Co.*, 994 F.Supp. 1196, 1201 (N.D. Cal. 1998)).

In its prior order, the court concluded that John Crane had not met its burden of showing that Amador can recover punitive damages and that it is more likely than not that such damages will, in combination with other requested relief, exceed $75,000. John Crane asserted in its notice of removal that "in employment actions, juries in California and elsewhere have returned verdicts with substantial awards for punitive and compensatory damages that far exceed $75,000."[29] To support this assertion, it cited a single case – *Freund v. Nycomed Amersham*, 347 F.3d 752, 756 (9th Cir. 2003) – in which a jury awarded punitive damages of $1,150,000 against the defendant-employer. The court noted that the amount awarded in *Freund* did not support John Crane's argument because the facts of the two cases were not analogous. Freund had worked for Nycomed for several years when his relationship with his supervisor began to sour. *Id.* He was eventually terminated for having an "aggressive" and

---

[29]Removal, ¶ 28.

9

"confrontational" attitude although it appeared the basis for his termination was his disagreement with his supervisor on a number of bona fide complaints related to workplace health and safety. *Id*. at 757. Amador, by contrast, worked a mere six days before calling in sick with Syncope, and left work the following day to go to the emergency room after damaging his own and two company cars. He had been employed only eleven days prior to being terminated. Amador, moreover, does not contend he was terminated because he raised bona fide concerns regarding the health or safety of his workplace; rather, he asserts he was discharged because he became disabled.

The court noted that John Crane had also failed to demonstrate that its financial resources were similar to Nycomed's, which had an operating profit of $158,000,000 at the time the jury awarded $1,150,000 in punitive damages against it. It thus concluded that John Crane had failed to show that an award of $1,150,000 in punitive damages would be reasonable in this case. See *id*. at 764. Given the substantial differences between the two cases, the court continues to believe that the punitive damages award in *Freund* is not persuasive evidence of the likely punitive damages award here.

John Crane's response does not address the deficiencies the court noted regarding its showing that in combination with other types of relief, punitive damages would push the amount in controversy above $75,000. Indeed, it does not mention punitive damages in its response, other than stating that "the jurisdictional amount can be satisfied by claims for general and special damages, punitive damages and attorney's fees."[30] John Crane's argument regarding potential punitive damages therefore remains entirely speculative, and it has not satisfied its burden of showing that punitive damages, combined with Amador's other requested relief, would more likely than not satisfy the amount in controversy requirement. See *Soto*, 2013 WL 3071267 at *4 ("argu[ing] that punitive damages 'could be permissible under California law' and simply citing cases where the defendant fired the plaintiff does not satisfy defendant's burden by a preponderance of the evidence when the standard requires a showing of cases with sufficiently similar facts); *Bigby*, 2013 WL 394876 at *6 (concluding that thirteen jury verdicts in purportedly similar cases were "distinguishable and provide[d] no basis for concluding that the potential punitive damages recoverable in this case exceed [the jurisdictional minimum]. Neither the facts nor the legal claims asserted in the cases are sufficiently analogous to warrant a finding that a punitive damages award . . . in Bigby's favor is more likely than not [to push the amount in controversy over $75,000]"); *Smith v. Colorado Cas. Ins. Co.*, No. CV–11–1527–PHX–FJM, 2011 WL 4703028, *2 (D. Ariz. Oct. 6, 2011) ("Defendant's assertion that punitive damages awards in bad faith cases are often a 'significantly large amount of money,' is not sufficient to establish the value of plaintiff's punitive damages claim. Defendant has not explained why the facts alleged in this case might warrant extraordinary punitive damages" (citation omitted)).

---

[30]Response, ¶ 9.

### c. Emotional Distress Damages

"[E]motional distress damages may be considered when calculating the amount in controversy even where not clearly pled in the complaint." *Simmons*, 209 F.Supp.2d at 1029; see also *Miller v. Michigan Millers Ins. Co.*, No. C–96–4480 MHP, 1997 WL 136242, *5 (N.D. Cal. Mar. 12, 1997); see also *Richmond v. Allstate Ins. Co.*, 897 F.Supp. 447, 450 (S.D. Cal. 1995) (stating that emotional distress damages can be included in the calculation of the amount in controversy). As the court noted in its prior order, Amador's complaint seeks damages for emotional distress but does not state the amount of damages he requests.[31] John Crane asserted in its notice of removal that "allegations relating to emotional distress as in the instant Complaint have been held sufficient to satisfy the amount in controversy requirement."[32] The court found this inadequate, noting that "[c]onclusory allegations as to the amount in controversy are insufficient." *Gaus*, 980 F.2d at 567. As with punitive damages, a defendant must provide summary-judgment-type evidence of the likely amount of any emotional distress damages award. This can be done "by introducing evidence of jury verdicts in cases with analogous facts." *Soto*, 2013 WL 3071267 at *3.

In support of its assertion that the emotional distress damages in controversy, in combination with other forms of recovery, will exceed the jurisdictional minimum, John Crane cited a single case. The court held in its prior order that that case – *Egan v. Premier Scales & Sytstem*, 237 F.Supp.2d 774, 776 (W.D. Ky. 2002) – did not support John Crane's assertion. The plaintiff in *Egan* alleged wrongful termination due to age and sex discrimination and sought to recover emotional distress damages for humiliation and embarrassment. Without analyzing the amount Egan placed at issue by requesting compensation for humiliation and embarrassment or the specific factual allegations in her complaint, the court determined that the "nature of [her] charges and her demand for punitive damages" sufficed to show that the amount in controversy requirement was met. *Id.* at 776.

In contrast to the plaintiff in *Egan*, Amador alleges disability discrimination and his complaint contains no information regarding the types of emotional distress he purportedly suffered. He does not allege, for example, that he was humiliated or embarrassed as a result of John Crane's actions. As noted, a defendant must cite "cases with analogous facts, not simply cases where the defendant fired the plaintiff." *Soto*, 2013 WL 3071267 at *4 (concluding that the citation of termination cases that involved age discrimination, racial discrimination, retaliation, sexual harassment, and disability discrimination was not sufficient to show that possible emotional distress damages satisfied the

---

[31] See Complaint, ¶ 66 ("As a direct and legal result of Defendants' failure to engage in a good faith, timely interactive process, Plaintiff has suffered and continues to suffer general, consequential, and special damages, including but not limited to . . . emotional distress . . ., all to his damage in an amount according to proof").

[32] Removal, ¶ 28.

11

jurisdictional minimum in a case involving termination allegedly in retaliation for expressing concerns about workplace safety).

The court, moreover, is not bound by a district court opinion from the Western District of Kentucky. To the extent the opinion might be persuasive, it does not suggest that in cases similar to this one, the amount of emotional distress damages recoverable is more likely than not to be a certain amount, because it does not describe the nature of the emotional distress claim or analyze why it demonstrated that the jurisdictional minimum was met. For all of these reasons, the court held that John Crane's allegation that Amador's emotional distress damages prayer sufficed to establish that the amount in controversy exceeded $75,000 was speculative and unsubstantiated.

John Crane's response does not address Amador's claim for emotional distress damages. It has therefore failed to cure the defects noted in the court's prior order. Its argument that Amador's claim for emotional distress damages shows that the amount in controversy is greater than $75,000 thus remains entirely speculative.

### d. Attorneys' Fees

Attorneys' fees may also be considered in evaluating whether the amount in controversy requirement has been satisfied if a plaintiff sues under a statute that authorizes an award of fees to the prevailing party. See *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) ("where an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy"); *Goldberg*, 678 F.2d at 1367; see also *Peterson v. BASF Corp.*, 12 F.Supp.2d 964, 968 (D. Minn. 1998) (holding that a district court scrutinizes both punitive damages and attorneys' fees claims more closely than a claim for actual damages in determining the amount in controversy). As with punitive damages, it is not sufficient simply to note that attorneys' fees are recoverable: rather, the defendant must provide and justify an estimate of the amount of fees likely to have been incurred. See, e.g., *Ajimatanrareje v. Metro. Life Ins. Co.*, No. C 99–0614 SI ARB, 1999 WL 319216, *5 (N.D. Cal. May 12, 1999) ("Because defendant has not specified any amount of recoverable attorneys' fees, it has failed to support its contention that attorneys' fees would satisfy the amount in controversy requirement or that they, in combination with other damages, would push the amount in controversy over the $75,000 minimum"); *Faulkner*, 1999 WL 820198 at *4 ("Defendant provides no breakdown of how many hours were spent on issues for which attorney's fees are recoverable and no evidence that all hours spent on the case would be billed at [$200 per hour]. In calculating potential attorney's fees, defendant works solely from the assumption that plaintiff's first settlement offer of $72,000 is the amount in controversy. Even if this were so, that offer expressly provided that each side would bear its own fees and costs. Therefore, defendant's argument that any attorney's fees of $3,000 or more would bring the amount in controversy to $75,000 is unpersuasive").

The court noted in its prior order that John Crane had proffered no evidence regarding the amount of attorneys' fees Amador had likely incurred as of the date of removal, nor any estimate as

to the total amount of fees that might be incurred. It merely argued that coupled with punitive damages, emotional distress damages, and lost wages, attorneys' fees "easily demonstrate[ ] the jurisdictional minimum is met."[33] The court held that this conclusory allegation was insufficient to carry John Crane's burden. See *MIC Philberts Investments v. American Casualty Co. of Reading, Pa.*, No. 1:12–cv–0131 AWI–BAM, 2012 WL 2118239, *5-6 (E.D. Cal. June 11, 2012) ("Defendant did not provide any factual basis for determining how much attorney's fees have been incurred thus far and will be incurred in the future. Defendant's conclusory allegation that Plaintiff will seek at least one-third under a contingent fee agreement is insufficient. Thus, Defendant's inclusion of Plaintiff's attorney's fees at an amount of $17,434.51 is speculative, unsupported, and cannot be included in determining the amount in controversy").

In its response, John Crane argues that Amador "seeks an undisclosed amount of attorney's fees," that litigating the case will undoubtedly require substantial effort, and that "attorney's fees in individual discrimination cases often exceed the damages."[34] John Crane cites one case, *Melendez v. HMS Family Restaurants, Inc.*, No. CV 11-3842 ODW (CWx), 2011 WL 3760058, *4 (C.D. Cal. Aug. 25, 2011), in which the district court found that attorneys' fees and punitive damages together would likely be at least $28,000. However, counsel in that case provided an estimate of the amount of fees that was based on an estimated number of hours worked and a billing rate of $300 per hour. *Id*. John Crane has not made any effort to estimate the amount of fees likely to be incurred. Accordingly, its claim that Amador's attorneys' fees prayer shows that the amount in controversy exceeds $75,000 remains too speculative to satisfy its burden.

### e. Conclusion Regarding the Amount in Controversy

For all of these reasons, the court once again finds that John Crane has not established that the amount in controversy in this case exceeds $75,000. See *Gaus*, 980 F.2d at 567 (holding that defendant had not overcome the "strong presumption" against removal jurisdiction because it offered "no facts whatsoever to support the court's exercise of jurisdiction," and simply "attempt[ed] to recite some 'magical incantation'" that the amount in controversy exceeded the jurisdictional threshold); *Garza v. Bettcher Indus., Inc.*, 752 F.Supp. 753, 763 (E.D. Mich. 1990) (holding that defendant's bald recitation that "the amount in controversy exceeds $50,000," without identification of specific factual allegations that supported the proposition, justified *sua sponte* remand).

### III. CONCLUSION

John Crane has not met its burden of demonstrating by a preponderance of the evidence that the amount in controversy exceeds $75,000. The court accordingly lacks subject matter jurisdiction to hear this action and directs the clerk to remand the action to Los Angeles Superior Court forthwith.

---

[33] *Id.*, ¶ 29.

[34] Response, ¶ 14.